David FLORES

v.

EDINBURG CONSOLIDATED INDE-PENDENT SCHOOL DISTRICT, A Po-litical Subdivision of the State of Texas, Jesus Cantu, Individually and in His Ca-pacity as a Teacher Employee of Edin-burg Independent School District.

Civ. A. No. B–80–199.

United States District Court,
S.D. Texas,
Brownsville Division.

Jan. 7, 1983.

Larry Watts, Houston, Tex., for plaintiff.

L. Aron Pena, William J. Quakenbush, Pena McDonald, Prestia & Ibanez, Edinburg, Tex., Roy S. Dale, O'Leary, Sanchez & Benton, Brownsville, Tex., for defendants.

## MEMORANDUM AND ORDER

VELA, District Judge.

This is an action brought pursuant to § 1983 of Title 42 for the alleged violation of the Plaintiff's federal constitutional rights under the Eighth and Fourteenth Amendments. It was originally filed by David Flores, a minor. He is now deceased and the action is being pursued by Aminta Flores as Administratrix of his Estate.

The Defendants are the Edinburg Independent School District, a political subdivision of the State of Texas and Jesus Cantu, a teacher employee of the school district.

Prior to bringing this action, the Plaintiff had filed a negligence action in the 93rd Judicial District Court of Hidalgo County, Texas, against the same Defendants. That Court granted Summary Judgment for Defendants because of their immunity from suit under the laws of the State of Texas. The appeal to the state appellate court was dismissed due to the Plaintiff's failure to timely file an Appeal Bond.

## JURISDICTION

Jurisdiction is conferred on the Court by 28 U.S.C. § 1331, which provides federal question jurisdiction, and by 28 U.S.C. § 1343(3), providing original jurisdiction in civil actions to redress the deprivation under color of state law of rights, privileges or immunities secured by the Constitution.

## FACTS

Taking the Plaintiff's factual allegations as true, which the Court must do when evaluating a Motion for Summary Judgment raised by the Defendant, the facts of this case are as follows:

David Flores, fourteen years old, was an eighth grade student at North Junior High School, Edinburg Independent School District. David's curriculum at North included an industrial arts woodshop class supervised by teacher Jesus Cantu. Cantu's classroom was composed of one area of student desks, and a larger area of work benches and motor-driven table saws and other equipment. Cantu's office was located within the classroom area, but was situated such that he could not view the classroom from within the office.

On January 14, 1977, the Plaintiff was in attendance at his woodshop class. He was constructing a jewelry box as a class project and needed to cut a board for that purpose. The particular table saw that he attempted to use, a Rockwell unit, was equipped on this day with several "dado heads", in addition to its regular saw blades. Cantu had previously instructed the class that no one was to change the blades on the saws other than himself. There was no safety guard on this particular saw, it having been broken approximately a month earlier. At the time the Plaintiff attempted to use the saw, Cantu was in his office and was not supervising the class. As the Plaintiff began to cut the board, moving it through the table saw, he heard his name called out. He turned his head momentarily and at that instant the "dado heads" and saw blades cut into his right hand, causing serious and permanent injuries.

This action was filed by Flores against Cantu and the Edinburg Independent School District, claiming the negligent deprivation under color of state law of rights

secured him by the Eighth and Fourteenth Amendments to the Constitution.

## ISSUES

Both defendants have filed motions seeking Summary Judgment. The legal issues raised by the defendants may be stated as follows:

1. Has Plaintiff alleged a cause of action under 42 U.S.C. § 1983 for which relief may be granted?

2. Is this action barred by the applicable statute of limitations?

3. Is the summary judgment granted defendants in the related state court action binding on the Plaintiff in this case so as to constitute *res judicata?*

4. Is the defendant Cantu entitled to good faith immunity?

5. Is defendant Edinburg Independent School District entitled to government immunity?

## CONCLUSIONS OF LAW
### NEGLIGENCE and § 1983

The Defendants initially claim that the Plaintiff has not alleged a cause of action under 42 U.S.C. § 1983, asserting that a negligent act cannot be the basis for such an action. The Supreme Court has recently rejected this contention, noting that neither the language of § 1983 itself [1] nor its legislative history [2] contain a state of mind requirement. *Parratt v. Taylor,* 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Rather than focusing on the state of mind of the defendant to determine the viability of a particular § 1983 action, the Supreme Court stated that the initial inquiry should be to determine if *two* essential elements are present:

1. Title 42 U.S.C. § 1983 provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

"(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.,* at 535, 101 S.Ct. at 1912.

In *Parratt,* an inmate of a Nebraska penitentiary filed a § 1983 action against prison officials who negligently lost a hobby kit that he had ordered through the mail. The Supreme Court found that the plaintiff met the two requirements stated above: "Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: The petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss even though negligently caused, amounted to a deprivation." *Id.,* at 536–37, 101 S.Ct. at 1913. The Court concluded, however, that the deprivation of property was not "without due process of law" since the tort remedies provided by the State of Nebraska were sufficient to insure the plaintiff an opportunity to be heard regarding his loss. *Id.,* at 543–44, 101 S.Ct. at 1916–17.

In order to provide further assistance to the lower courts in adjudicating claims of this type, the Court in *Parratt* approved the analysis of the Court of Appeals for the Seventh Circuit in the case of *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), as the proper manner in which to approach a case such as this. In *Bonner* the Court elucidated:

"It seems to us that there is an important difference between a challenge to an established state procedure as lacking in

action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

2. The legislative history of 42 U.S.C. § 1983 is reviewed extensively in *Monroe v. Pope,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against 'State' deprivations of property; in the latter situation, however, even though there is action 'under color of' state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this, the law of Illinois provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of the prison guards. We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." 517 F.2d at 1319.

Using this analysis, it is at first obvious that the Plaintiff in this case is not challenging an established state procedure as lacking in due process. As in *Parratt v. Taylor* and *Bonner v. Coughlin, supra,* the Plaintiff is claiming damages caused by the misconduct or unauthorized acts of a state officer. *Parratt* teaches that, in these instances, constitutional due process can be satisfied by the availability of a post deprivation remedy.

"In such a case, the loss is not a result of some established state procedure and the State can not predict precisely when the loss will occur. It is difficult to perceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss . . ., although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State. Indeed, in most cases, it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation." 451 U.S. at 541, 101 S.Ct. at 1915–16.

The only apparent difference between this case and *Parratt* is that the Plaintiff in *Parratt* had available a post deprivation remedy sufficient to satisfy the requirements of due process. In this case no such remedy exists. The Texas Tort Claims Act, Article 6252–19, V.A.T.S., abrogates the common law immunity of state governmental units under certain circumstances. Section 19A of that act, however, maintains the immunity of school districts from tort liability except in cases involving motor vehicles.[3] Furthermore, the Texas Education Code, § 21.912(b), provides personal immunity for teachers in connection with acts within the scope of their employment "and which acts involve the exercise of judgment or discretion."[4] Liability is provided for in cases involving motor vehicles. V.T.C.A., Education Code § 21.912(c).[5] No remedy is therefore available for the Plaintiff under State law.[6]

---

**3.** Article 6252–19, Section 19A provides: "The provisions of this Act shall not apply to school districts or to junior college districts except as to motor vehicles."

**4.** Section 21.912, Texas Education Code, provides in pertinent part:
"(b) No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students."
Although at first glance this section appears to maintain the liability of school employees for negligent acts which cause bodily injury to stu-

dents, the Supreme Court of Texas has interpreted this section to impose liability only where negligence in the discipline of students causes bodily injury. *See, Barr v. Bernhard,* 562 S.W.2d 844 (Tex.1978).

**5.** "(c) This section is not applicable to the operation, use, or maintenance of any motor vehicle."

**6.** The Plaintiff has not alleged as a claim the failure of the state to provide a tort remedy. If such was the case, it would appear that either the State of Texas or its legislators would have to be sued directly. Both, however, are immune from suit. *See, Parratt v. Taylor,* 451 U.S. 527, 534 n. 8, 101 S.Ct. 1908, 1912 n. 8, 68 L.Ed.2d 420 (Powell, J., concurring).

The Court in *Parratt* strongly implied that but for the Nebraska tort claim remedy the Plaintiff in that case would have had a valid Fourteenth Amendment Claim. The facts in this case are no less egregious than those presented in *Parratt* and undoubtedly satisfy the three prerequisites which were "unquestionably" present in *Parratt. See, Parratt v. Taylor,* 451 U.S. at 536–37, 101 S.Ct. at 1913. The alleged negligence was committed by one acting under color of state law, the injury herein is a liberty right, and the loss was definitely a deprivation. Therefore, the plaintiff has seemingly alleged a cause of action within the purview of § 1983 as defined by the Supreme Court in *Parratt v. Taylor.*

Aside from this procedural analysis, however, the Plaintiff's claim must also withstand substantive scrutiny to determine that, in fact, a federal constitutional right has been violated. *See, e.g., Baker v. McCollan,* 443 U.S. 137, 141, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979). *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1977); *Paul v. Davis,* 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976). In fact, both Justices Stewart and Powell, concurring in the result reached by the majority in *Parratt,* voiced doubt that the negligent act in that case amounted to "a deprivation in the constitutional sense." *Parratt v. Taylor,* 451 U.S. at 544 and 548, 101 S.Ct. at 1917 and 1919. In the words of Justice Powell, § 1983 "was enacted to deter real *abuses* by state officials in the exercise of governmental powers. It would make no sense to open the federal courts to lawsuits where there has been no affirmative abuse of power, merely a negligent deed by one who happens to be acting under color of state law." *Id.* Justice Powell went on to warn that the more procedural approach taken in the majority opinion would allow more tort claims to be brought by way of § 1983 than might have been presupposed. *Id.,* at 551, 101 S.Ct. at 1921.

This approach was most recently employed by the Fifth Circuit in *Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982), decided subsequent to *Parratt.* In *Hull,* the Plaintiff was injured when his automobile was struck by a train at a Duncanville railroad crossing. He brought suit against the city under § 1983 alleging that he was deprived of his liberty due to the City's failure by policy or custom to enforce the 25 m.p.h. speed limit for train traffic set by city ordinance, and its failure to maintain the crossing in a safe manner. The Court affirmed the District Court's dismissal of the action on the ground that the Plaintiff's substantive claim did not implicate any federal constitutional right. *Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982); *Williams v. Kelley,* 624 F.2d 695 (5th Cir. 1980).

Considering the facts as presented in this case, however, the Court feels that to simply state that no violation of a constitutional right has occurred would be to decide this issue solely on the basis of the Defendants state of mind, in derogation of *Parratt v. Taylor, supra.* It is doubtful whether this would even be at issue had the Plaintiff's injury resulted from the intentional act of the Defendant. The facts as pleaded sufficiently allege the violation of a federal constitutional right. The Court is so persuaded not only by the fact that the plaintiff was allegedly injured by the act or omission of a state actor, but also due to the nature of the activity in which the plaintiff was engaged at the time of his injury, which distinguishes this case from *Hull v. City of Duncanville, supra.*

At the time of the alleged occurrence, the Plaintiff was attending a public school and was participating in a class for which he would receive credit towards graduation. The Court perceives the educational nature of this activity as a significant distinction between this case and many "constitutional tort" cases.

Although public education is not a "right" secured by the Constitution, it is more then a mere governmental benefit. *Plyler v. Doe,* —— U.S. ——, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The Su-

preme Court has recognized "the Public school as a most vital civic institution for the preservation of a democratic system of government." *Abington School District v. Schempp*, 374 U.S. 203, 230, 83 S.Ct. 1560, 1575, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). In *Plyler v. Doe, supra,* the Supreme Court reaffirmed its observations made in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954):

"Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. . . ." *Id.,* at 493, 74 S.Ct. at 691.

The Plaintiff herein was not engaged in a voluntary or extra-curricular activity such as a school sporting event, nor did his injury occur at a school function after regular school hours. Instead, his alleged deprivation occurred while he was engaged in a core curriculum course, and at a time when his attendance was compelled by state law.

■ The Supreme Court has held that a student's Fourteenth Amendment liberty interests are implicated when a teacher administers corporal punishment as a disciplinary measure. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Certainly these same interests are implicated when a teacher causes serious injury to a child, even though that injury was the result of negligence rather than deliberate action. Accordingly, the Court is of the opinion that a sufficient claim has been alleged under § 1983 and the Fourteenth Amendment.

## EIGHTH AMENDMENT CLAIM

■ The Court is not persuaded that a cause of action has been alleged under the Eighth Amendment. The Supreme Court clearly identified the parameters of the Eighth Amendment's protection against cruel and unusual punishment in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Reviewing both the history of the Amendment itself and the decisions interpreting it, the Court recognized the Amendment as circumscribing the criminal process in three ways: "First, it limits the kinds of punishment that can be imposed on those convicted of crimes, *e.g., Estelle v. Gamble,* supra;[7] second, it proscribes punishment grossly disproportionate to the severity of the crime, *e.g., Weems v. United States, supra;*[8] and third, it imposes substantive limits on what can be made criminal and punished as such, *e.g. Robinson v. California, supra.*[9] 'The primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . .' *Powell v. Texas, supra,*[10] at 531–532, 88 S.Ct., at 2154 (plurality opinion)."

The Eighth Amendment is inapplicable to the facts as alleged by the Plaintiff in this case and therefore summary judgment is appropriate as to this claim.

## RES JUDICATA

As stated earlier, the Plaintiff had previously filed a tort action against these Defendants in the District Court of the State of Texas. That Court granted Summary Judgment for the Defendants based on their governmental immunity under Texas law. The Plaintiff's appeal from that judgment was dismissed due to his failure to

**7.** *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

**8.** *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

**9.** *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

**10.** *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

timely file an Appeal Bond. The Defendants argue that even if the Plaintiff has stated a cause of action within the purview of § 1983, the State Court Judgment acts to bar this action through the doctrine of res judicata.

 Federal courts are required to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so. 28 U.S.C. § 1738 (1976);[11] *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 97 (5th Cir.1982). Suits brought pursuant to 42 U.S.C. § 1983 are not excepted from this rule. *Allen v. McCurry, supra.* While *Allen v. McCurry* decided only that federal courts must give preclusive effect in § 1983 actions as to those issues actually raised and decided in the prior action, the Fifth Circuit Court of Appeals has interpreted 28 U.S.C. § 1738 to also preclude the relitigation of issues that *could have been raised* in the prior action but were not, when the courts of the state rendering the prior judgment would do so. *See Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 98 (5th Cir.1982).

Our decision therefore turns on the conclusiveness of the prior judgment under Texas law. The leading case on this subject by the Supreme Court of Texas is *Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex. 1971). In *Abbott* the Court stated that:

> "[A]n existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit." (citing authorities)

> "Further, the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried." (citing

authorities) "Stated differently, a party cannot relitigate matters which he might have interposed, but failed to do so, in an action between the same parties or their privies in reference to the same *subject matter.*" (emphasis added) 470 S.W.2d at 642.

The Court later clarified its holding in *Abbott* as to issues which might have been raised, but were not, in the case of *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973). In *Griffin,* the Court held that a judgment for the Defendant in an action for breach of contract did not bar a subsequent suit in quantum meruit, stating that the term "subject matter", as used in the statement quoted above, referred not to the transaction from which the suit arose, but to the claim or controversy at issue. *Id.,* at 537. The Court further stated,

> "We have not said or held that a judgment in a suit on one claim or cause of action is necessarily conclusive of all claims and causes of action against the same party, or relating to the same transaction." ... "As a general rule, a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action, except as to issues of fact actually litigated and determined in the first suit." 496 S.W.2d at 538.

*Accord, Gilbert v. Fireside Enterprises, Inc.,* 611 S.W.2d 869, 871 (Tex.Civ.App.—Dallas 1980, no writ). *Gabriel v. Snell,* 613 S.W.2d 810, 813, (Tex.Civ.App.—Houston 1981, no writ).

Under Texas law, therefore, the determinative consideration is whether or not the claim against which the defense of res judicata is raised was part of the same cause of action concluded by the prior judgment. In this regard, the Texas courts have not strictly adhered to a technical definition of a cause of action for res judicata purposes. Instead, the doctrine of res judicata has been applied on a "functional ad hoc basis"

---

11. Title 28 § 1738 provides, in pertinent part:

"The records and judicial proceedings of any court of any ... State, Territory or Possession, ... shall have the same full faith and credit in every court within the United States, and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

analyzing each case in light of the relevant policy considerations underlying the doctrine. *Gilbert v. Fireside Enterprises, Inc., supra,* at 876. *See, e.g., Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768 (Tex.1979). *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973). *Westinghouse Credit Corp. v. Kownslar,* 496 S.W.2d 531 (Tex.1973). *Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex.1971). *Ogletree v. Crates,* 363 S.W.2d 431 (Tex. 1963).

■ The traditional policy considerations include "the promotion of judicial economy, prevention of vexatious litigation, prevention of double recovery and promotion of the stability of decisions." *Gilbert v. Fireside Enterprises, Inc., supra,* at 877. The maintenance of a subsequent action must substantially offend one or more of these policy considerations before the doctrine of res judicata will be invoked to preclude the action. *Westinghouse Credit Corp. v. Kownslar,* 496 S.W.2d 531, 532 (Tex.1973). *Gilbert v. Fireside Enterprises, Inc.,* 611 S.W.2d 869, 877 (Tex.Civ.App.—Dallas 1980, no writ).

■ In the case at hand, however, neither of these policy reasons warrants the application of res judicata to this action. The promotion of judicial economy would not be measurably served by disallowing this action since the prior lawsuit was disposed of by Summary Judgment. Nor is there the risk of a double recovery since there was no recovery in the first suit. As for the prevention of vexatious litigation, as stated in *Gilbert v. Fireside Enterprises, Inc., supra,* at 877–78, the complete loss of one's claim is too harsh a penalty for the failure of the Plaintiff to join two causes of action in one lawsuit. The Court feels that this is particularly true in this instance as the nature of this cause of action is completely different from that asserted in the State action. Finally, the maintenance of this action does not threaten the stability of the prior State Court Judgment. That judgment was rendered solely on legal grounds, with no factual matters having been decided. This action is based on a different legal theory of recovery under the same set of factual allegations. As stated by the Texas Court of Appeals in *Gilbert v. Fireside Enterprises, Inc., supra,*

> "In our view, the stability of a decision is normally threatened only when the legal theory of recovery in a prior and a subsequent action remains the same, or substantially the same, and different factual theories, stemming from the underlying situation giving rise to the litigation in the first place, are asserted in the prior and subsequent actions to justify recovery under the same legal theory."

611 S.W.2d at 879. It appearing that no compelling policy consideration is substantially violated by the maintenance of this action, the Court therefore finds that the doctrine of res judicata does not act to bar this action.

## LIMITATIONS

Defendants also assert that the plaintiff's action is barred by limitations.

No statute of limitations was specifically enacted to govern actions brought under § 1983. Consequently, federal law requires the Court to "borrow" the state statute of limitations governing analogous causes of action. *Board of Regents, Etc. v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). *Drayden v. Needville Independent School District,* 642 F.2d 129, 131 (5th Cir. 1981). *Braden v. Texas A & M University System,* 636 F.2d 90, 92 (5th Cir.1981). The Court is also required to apply the coordinating state tolling provisions, as long as those provisions are not inconsistent with those policies contemplating § 1983 as an independent federal remedy. *Board of Regents, Etc. v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980). *Rubin v. O'Koren,* 644 F.2d 1023, 1025 (5th Cir.1981).

In this case the complaint alleges that the Plaintiff was subjected to the deprivation of constitutionally protected interests without due process. The analogous state law claim for statute of limitations purposes sounds in tort and would be governed by Article 5526(4), which provides a two-year

limitations period for actions "for injury done to the person of another." Article 5526(4), V.A.T.S.[12] The alleged injury in this case occurred on January 14, 1977, and the Defendants argue that this action should have been filed within two years from that date. This action was filed on September 10, 1980, some three years and eight months after the alleged injury.

■ Under Texas law, however, this two-year period of limitations does not run during the period of a Plaintiff's minority. Instead, he has until two years after reaching majority within which to bring his action. Article 5535, V.A.T.S.[13] *Cox v. McDonnell-Douglas Corp.,* 665 F.2d 566, 572 (5th Cir.1982). Since the Plaintiff in this case was only fourteen years old at the time of his injury, he could have filed this action at anytime prior to November 24, 1982, the date of his twentieth birthday. This action was therefore filed prior to the running of the statute of limitations and is not barred.

## QUALIFIED IMMUNITY DEFENSE

Defendant Cantu contends that he, as a state official, is immune from liability for damages under § 1983. The Plaintiff does not contest Cantu's status as a government official, but argues that he is not entitled to that defense under the facts of this case.

■ Government officials are extended a qualified immunity from liability for damages under § 1983 for actions taken in good faith and within the scope of their official responsibilities. *Procunier v. Navarette,* 434 U.S. 555, 561–62, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974). This qualified immunity may shield an official from liability in his individual capacity, but will not relieve him from liability in his official capacity. *Universal Amusement Co., Inc. v. Hofheinz,* 646 F.2d 996, 997 (5th Cir.1981). The plaintiff may defeat a government officials immunity by showing that he did not act in good faith. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). In this context, good faith contains both an objective element and a subjective element.[14] Under the objective element, the reasonableness of the defendant's conduct is judged in reference to the law existing at the time he committed the alleged act. *Wood v. Strickland, supra; Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1980). The subjective element of good faith, on the other hand, necessitates a determination of the presence or absence of "malicious intent" on the part of the official in causing the alleged deprivation. *Barker v. Norman, supra; Bogard v. Cook, supra.*

12. Article 5526, V.A.T.S., provides in pertinent part:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

. . . . .

4. Action for injury done to the person of another.
. . ."

13. Article 5535, V.A.T.S., provides:
"If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues either a minor, a married person under twenty-one years of age, a person imprisoned or a person of unsound mind, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

14. Some question may exist as to the viability of the subjective element of the good faith test since the recent decision of the Supreme Court in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In that decision, the Court held that in actions brought directly under the Constitution against federal officers, the immunity of those officers could be defeated only by a showing of a lack of objective good faith. *Id.,* 102 S.Ct. at 2738. While the Court specifically stated that their decision did not purport to address the immunity of state officials sued under § 1983, the Court quoted from their opinion in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, saying that "it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2738 n. 30.

The Court is of the opinion that only the objective element is at issue in this case, as there is no contention by the Plaintiff that Cantu acted with any measure of intent, much less with the malicious intent of injuring the Plaintiff.

The Court is not persuaded that Defendant Cantu acted with a lack of objective good faith. The injury to the Plaintiff in this case occurred on January 14, 1977, four years prior to the Supreme Court's decision of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court in *Parratt* recognized that the law regarding § 1983 claims based on negligence was unclear and that the District Courts and Courts of Appeals alike were "struggl[ing] to determine the correct manner in which to analyze claims [of that nature]." *Parratt v. Taylor,* supra, at 533, 101 S.Ct. at 1911. Under these circumstances, it cannot be said that the Defendant reasonably should have known that his actions would violate the Plaintiff's constitutional rights. The Court is further of the opinion that, under the facts as alleged, the Defendant's good-faith immunity would still be intact even if the law in this area had been clear at the time of the Plaintiff's injury. As this Court interprets that defense, the Defendant is held to have lacked good faith when he deliberately engages in conduct that he knew or should have known would violate the Plaintiff's clearly established constitutional rights. No such deliberate action has been alleged in this case. Defendant Cantu, therefore, is immune from liability for damages in his individual capacity.

## GOVERNMENTAL IMMUNITY

The Defendant Edinburg Independent School District finally contends that, as a

governmental entity, it is immune from liability for damages. Although this claim is not more fully explained in the Defendant's Motion For Summary Judgment, the Court assumes that the Defendant is claiming immunity under the Eleventh Amendment.

The Eleventh Amendment prohibits private actions for damages against a state in federal court.[15] *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980). Local governments, however, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability can also be imposed for deprivations caused by governmental custom and usage, even though such custom or usage has not received formal or written approval. *Id.,* at 691, 98 S.Ct. at 2036; *Rheuark v. Shaw,* 628 F.2d 297, 305 (5th Cir.1980).

While liability was extended in *Monell* to independent local governments, the Eleventh Amendment still acts to bar suits against those bodies which are merely an agency or arm of the State. *See, Kingsville Independent School District v. Cooper,* 611 F.2d 1109 (5th Cir.1980); *Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir.1979). Independent school districts however, are "local governmental bodies" within the purview of *Monell v. Department of Social Services,* supra, and therefore not protected by the Eleventh Amendment.[16] *Kingsville Independent School District v. Cooper,* 611 F. 1109, 1112 (5th Cir.1980).

15. U.S. Const.Amend. XI provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

Although the Amendment on its face appears to limit federal judicial power only with respect to suits by citizens of another state or country, it has long been interpreted to preclude actions

against a state by its own citizens as well. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980).

16. *See, Wright v. Houston Independent School District,* 393 F.Supp. 1149 (S.D.Tex.1975), *vacated on other grounds,* 569 F.2d 1383 (5th Cir.1978) (analyzing independent school district as compared to municipalities).

A local governmental body cannot be held liable solely on a *respondeat superior* theory. *Monell v. Department of Social Services, supra.* As indicated earlier, "it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.,* 436 U.S. at 694, 98 S.Ct. at 2037. A fact question exists in this case as to whether or not some policy or custom of the Defendant School District was the cause of the Plaintiff's injury, and therefore Summary Judgment on this ground is not proper.

## ORDER

In accordance with the foregoing Memorandum, Summary Judgment is hereby Granted Defendants Jesus Cantu and Edinburg Independent School District as to Plaintiff's Eighth Amendment claim; Summary Judgment is further granted Defendant Jesus Cantu in his individual capacity. Defendant's Motion For Summary Judgment is in all other respects Denied.