**Jay Howard COHEN, Appellant,**

v.

**Helene Renee COHEN, Appellee.**

**No. 01–83–0205–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 15, 1983.

Rehearing Denied Jan. 12, 1984.

William H. Scott, Jr., Houston, for appellant.

Mary Rawlins, Houston, for appellee.

Before WARREN, DOYLE and LEVY, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from a judgment granting the appellee an increase in the principal sum on which the appellant would pay interest until such sum was paid according to the terms of a divorce decree rendered January 31, 1975. That decree, in its relevant portion, awarded the appellee $219,600 to be paid according to a complex formula. The appellant challenges the judgment with nine points of error.

We note at the outset that in a suit involving these same parties, the appellant, as plaintiff, filed a petition for a declaratory judgment in 1980, seeking to hold void the hereinafter discussed provisions of the property settlement in the divorce decree rendered in 1975. The appellee, as defendant, filed a plea in abatement to the appellant's suit. The trial court sustained her

plea and dismissed the appellant's suit. On appeal in Cause No. 01–81–0068–CV (Tex. App.—Waco 1982), the trial court's judgment was affirmed and in holding that the 1975 decree was not void on its face, the appellate court observed that "The terms of the decree merely provided a method by which plaintiff would be allowed to use the funds in exchange for paying 10% interest." 632 S.W.2d 172, 174 (Tex.App.1982).

Returning to the case before us, in July 1982, the appellee, under the same cause number of the trial court as the decree of January 31, 1975, and in the same court, filed a motion for collection of judgment. The trial court, unable to determine the exact amount owed, denied the appellee's motion. In September 1982, the appellee then filed a motion in aid of judgment, urging the court to interpret the 1975 divorce decree.

The appellant, in his first and second points of error, asserts that the trial court erred in rendering a judgment amending, changing, modifying, and conforming the terms of the previous final divorce decree because the court had no jurisdiction and the appellee's cause of action was *res judicata.*

The contested portion of Paragraph 2(b) of the decree reads as follows:

Out of cash on hand, $219,600.00 to be paid by Jay Howard Cohen to Petitioner as follows:

(a) $27,000 in cash. . . .

(b) $192,600 due and payable on or before February 1, 1985. Until such sum has been paid, Jay Howard Cohen shall pay to Helene Renee Cohen interest on the remaining unpaid principal balance of said sum at the rate of 10% per annum beginning on February 1, 1975, with the accrued interest thereon from February 1, 1975, until June 30, 1975, to be paid on July 1, 1975, and thereafter the accrued interest on the remaining principal balance is to be paid monthly on the 1st day of each month. If the entire sum has not been paid by February 1, 1978, the principal sum outstanding on February 1 of each succeeding year shall be increased or decreased as follows: Commencing on February 1, 1979, and every February 1 thereafter, the then outstanding principal sum remaining shall be adjusted in the following manner: If the Implied Price Deflator for Personal Consumption Expenditures (1958 = 100) published by the Bureau of Economic Analysis of the United States Department of Current Business shows an increase or a decrease for the month of January of the year preceding the year of adjustment, the principal sum then outstanding shall be adjusted upwards or downwards in proportion to the increase or decrease in such Deflator over a one year period. All such adjustments shall become immediately effective, and such adjusted principal sum shall continue in effect until further adjusted in accordance with this paragraph or until the obligation is paid in full" . . .

By its judgment on the motion in aid of judgment, the trial court, based upon its findings of fact and conclusions of law, adopted the following provisions for future adjustments under Paragraph 2(b):

It is further Ordered, Adjudged and Decreed by the Court that, commencing in the year 1983, the increase or decrease, if any, provided for in Paragraph 2(b) of the Judgment of January 31, 1975, shall be effected in the following manner:

On February 1, 1983, and every February 1 thereafter, the then outstanding principal sum, (herein determined) shall be increased or decreased by adjusting such principal sum then outstanding upwards or downwards in proportion to the increase or decrease in the Implicit Price Deflator calendar year, and shall become effective on February 1 of each year, for all purposes, including the calculation of interest, and such adjusted principal sum shall continue in effect until further adjustment, if any, by a proportional adjustment determined in like manner as such Implicit Price Deflator for Personal Consumption Expenditures shall increase or decrease over the previous one calendar year period. The factor for increase or decrease in the principal sum shall be

calculated each year in the following manner: The difference between the estimated fourth (4th) quarter value of the Implicit Price Deflator for Personal Consumption Expenditures for the year preceeding and the year two years before the year of calculation divided by the Implicit Price Deflator for Personal Consumption Expenditures for the year two years prior to the year of calculation. The adjusted principal for that year shall be the product of the factor and the principal sum as last adjusted.

The question before us is whether the original provisions of the method of calculating how the appellant would pay for the use of the appellee's money were vague and ambiguous, or whether such terms were plain, clear, and susceptible of only one meaning. A careful reading of the paragraph for future adjustments under Paragraph 2(b) of the decree reveals that the trial court did not change Paragraph 2(b), but only determined how it should be interpreted and applied. We agree with the trial court's findings that not only are certain portions of the decree's provisions susceptible of two meanings, but the statement in the 1975 decree of "(1958–100)" is descriptive in nature and does not identify the exclusive method which must be used. If the court had changed any of the terms or provisions of the decree, such action would have been barred under Rule 329(b), T.R. C.P., because 30 days had elapsed since its rendition. See also *Belz v. Belz,* 638 S.W.2d 158 (Tex.App.—Dallas 1982, no writ) and the authorities there cited. The trial court had jurisdiction to make the interpretation as reflected in its judgment rendered on October 29, 1982.

We are convinced that the facts presented by this case do not give rise to the application of the doctrine of *res judicata.* Contrary to the argument of the appellant, the court made no attempt to interpret Paragraph 2(b) of the decree in its judgment on the motion for collection of judgment. The court merely found that the paragraph was vague and that it was impossible to determine the precise amount due under the 1975 decree as written in Paragraph 2(b), and denied the motion. Thus, when the court was called upon to interpret Paragraph 2(b) in the motion in aid of judgment, that matter had not previously been decided by the court's ruling in the motion to collect judgment. Even if we should determine that the issue of interpretation *might* have been litigated in the first motion by the appellee, that would not automatically preclude the relitigation of that matter. In Texas, *res judicata* is applied on a "functional *ad hoc* basis." *Gilbert v. Fireside Enterprises,* 611 S.W.2d 869 (Tex.Civ. App.—Dallas 1980, no writ). *Flores v. Edinburg Consolidated Ind. School Dist.,* 554 F.Supp. 974, 981, 982 (S.D.Tex.1983); *Fulcher v. Texas Bd. of Public Accountancy,* 532 F.Supp. 683 (S.D.Tex.1982). Each case is analyzed under the following traditional policy considerations underlying the doctrine of *res judicata:*

(a) the promotion of judicial economy,

(b) the prevention of vexatious litigation,

(c) the prevention of double recovery, and

(d) the promotion of the stability of decisions. *Gilbert v. Fireside Enterprises, supra.*

If the maintenance of a subsequent action substantially offends one or more of the above policy considerations, the court will invoke the doctrine of *res judicata* to preclude the action. *See, Westinghouse Credit Corp. v. Kownslar,* 496 S.W.2d 531, 532 (Tex.1973); *Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex.1971).

In the instant case, the promotion of judicial economy or the prevention of double recovery would not be achieved by disallowing the appellee's action. It has been held that the promotion of judicial economy is not a compelling rationale "for applying the doctrine *res judicata,* unless the case is massive and has tied up court dockets for a long period of time." *Gilbert, supra* at 877.

Here, the divorce action and the ensuing appeals have not tied up the dockets for an unusual length of time, nor was there any danger of double recovery, since

there had been no recovery in the first suit. Neither do we deem the appellee's latter suit as vexatious litigation. As stated in *Gilbert, supra,* "the complete loss of one's claim is too harsh a penalty for the failure of the plaintiff to join two causes of action in one lawsuit." We overrule the appellant's first and second points of error.

The appellant's remaining seven points of error collectively complain that the trial court erred in construing and interpreting terms of the 1975 divorce decree, because the judgment was final and the terms were unambiguous.

■ In deciding whether Paragraph 2(b) of the 1975 decree is ambiguous, we first examine the inflation provision set forth therein, The court used the phrase, "*Implied* Price Deflator*.*" It is undisputed that the court and the parties meant, "*Implicit* Price Deflator." Thus, the statement: "If the Implied Price Deflator for Personal Consumption Expenditures (1958–100) published by the Bureau of Economic Analysis of the United States Department of Commerce....", could have no reasonable meaning since such deflator never existed. However, we can determine from reading the entire decree that it was the intention of the court to provide a rate of inflation so that the appellee would not be prejudiced in the event that the appellant chose not to pay the full $192,600 due to her by February 1, 1978. We further determine that the court, after hearing expert testimony, was justified in concluding that the decree of 1975 was ambiguous in that the phrase, "the principal sum outstanding on February 1 of each succeeding year *shall* be increased or decreased as follows ..." was susceptible of two meanings (being mandatory or not mandatory) as set out in the conclusions of law. The trial court also concluded that the expression, "(1958 = 100)" was a descriptive term and did not identify the exclusive method which must be used. This presented another ambiguity, and because the judgment was ambiguous, its construction was a question of fact for the trial judge, aided if necessary by extrinsic evidence. *Gibson v. Bentley,* 605 S.W.2d 337 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

The appellant contends that the court erred in concluding as a matter of law that an index different from the one set out in the 1975 judgment was proper in view of the evidence submitted in support thereof.

After hearing extensive testimony on the Implicit Price Deflator indices, the trial court made, *inter alia,* the following finding:

8. The proper basis for a calculation of increase or decrease, if any, in the principal amount due under the Decree of Divorce of January 31, 1975, is by resort hereafter to the change in the Implicit Price Deflator for Personal Consumption Expenditures over the previous calendar year, and such calculations should be made on February 1 of each year commencing February 1, 1983, and the Judgment should so declare and provide.

■ When specific findings of fact and conclusions of law are filed, and a statement of facts is also brought forward, as in the instant case, the findings will be sustained if there is any evidence to support them. *Gulf Freeway Lumber Co. v. Houston Inv. Realty Trust,* 452 S.W.2d 39 (Tex. Civ.App.—Houston [14th Dist.] 1970, no writ).

■ In the instant case, the factual determinations made by the trial judge are supported by the testimony of the appellee's accountant, Mr. Morris, who testified on direct examination that there was no difference in the 1958 and 1972 indices, for the purpose of determining interest rates. The appellant did not present any evidence which refuted the witness' testimony. We overrule the appellant's points of error three through nine.

The judgment of the trial court is affirmed.