Aminta **FLORES, et al., Plaintiffs-Appellees Cross-Appellants,**

v.

**EDINBURG CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, et al., Defendants-Appellants Cross-Appellees.**

No. 83–2195.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1984.

Rehearing and Rehearing En Banc Denied Nov. 1, 1984.

See also, 554 F.Supp. 974.

Alfonso Ibanez, L. Aron Pena, Edinburg, Tex., Roy S. Dale, Brownsville, Tex., for defendants-appellants cross-appellees.

Mitchell J. Green, Conde Thompson Cox, Asst. Attys. Gen., Austin, Tex., amicus curiae, for State of Tex.

Douglas M. Becker, Ray Goldstein, Austin, Tex., for Edinburg Consol. Indep. School Dist.

Larry Watts, Laura Oren, Houston, Tex., for plaintiffs-appellees cross-appellants.

Before GARZA, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

The Edinburg Consolidated Independent School District appeals from a judgment entered against it in this § 1983 action brought by the administratrix of the estate of David Flores, a junior high school student who suffered an injury to his hand in a classroom accident and later committed suicide. A jury found that the school district's negligence had caused an infringement of Flores's constitutionally-protected right not to have his bodily integrity impaired by unsafe school conditions, and awarded damages of $550,000. A suit in state court identical to the federal suit, except that its legal theory was state tort rather than constitutional tort, resulted in a summary judgment for defendants on grounds of sovereign immunity. Because we conclude that under Texas law the present suit is barred by the doctrine of res judicata, we reverse the judgment and order that judgment be entered for the defendants.

I

In January 1977, when he was fourteen years old, Flores was using a power circular saw in his woodworking class and suffered a severe cut to his right hand; at the time of the injury, the saw's safety guard had been removed and the teacher was in an area of the classroom from which he could not observe or supervise students using the power tools. Although surgery was successful in saving Flores's hand, the hand was left permanently deformed—a condition that evidently preyed on Flores's

mind. The Flores family blames this condition for Flores's eventual suicide in October 1981.

In January 1979 Flores sued the school district and his woodshop teacher in the Texas state court, arguing that their negligence had been the cause of his injury. Defendants were granted summary judgment before trial on the ground of sovereign immunity. Tex.Civ.Stat.Ann. art. 6252–19a (waiver of immunity in Texas Tort Claims Act does not apply to school districts). No appeal from this judgment was ever perfected.

In September 1980 Flores filed the present suit in the district court, alleging that the school board's custom or policy of disregarding safety concerns had led to Flores's injury; a right of recovery was asserted under 42 U.S.C. § 1983. Flores's woodshop teacher was also named as a defendant, but he was granted summary judgment by reason of qualified governmental immunity. The school board's motion for summary judgment, which raised *inter alia* the issue of res judicata, was denied. The case proceeded to trial [1] and resulted in a judgment for the plaintiffs. The school district appeals.[2]

## II

The Texas law of res judicata [3] is traceable at least back to *Foster v. Wells*, 4 Tex. 101 (1849), and has not changed significantly since that time. The most frequently cited early statement of the rule is found in *Freeman v. McAninch*, 87 Tex. 132, 27 S.W. 97, 100 (1894), where the Texas Supreme Court declared that "[a] party cannot relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties or their privies, in reference to the same subject matter." Thus, a judgment "is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided." *Id.*

On its face, this broad statement of the rule suggests that every claim that might be permissibly joined in one suit must be so joined or will be forfeited. The Texas Supreme Court, however, soon explained that it understood the rule "to mean only that all matters which properly belong to a cause of action asserted in the pending suit, such as will sustain or defeat, in whole or in part, that cause of action, must be produced or be barred by the judgment, and not that all of the different causes of action a party may have respecting the same property must be joined, because they may be, in one proceeding." *Moore v. Snowball*, 98 Tex. 16, 81 S.W. 5, 8 (1904). The court quoted approvingly from Freeman on Judgments 249: "The general expression, ... that a judgment is conclusive of every matter which the parties might have litigated in the action, is misleading. What is really meant by this expression is that a judgment is conclusive upon the issues tendered by the plaintiff's complaint." *Id.*

More recently, these early statements of the doctrine of res judicata were reaffirmed in *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex.1971):

> [A]n existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jur-

---

1. After David Flores's suicide, his mother was certified as administratrix of his estate and was substituted as plaintiff in that capacity. Flores's mother and father are also named as plaintiffs in their individual capacities.

2. In light of our disposition of this case, we need not consider most of the grounds of appeal urged by the school board, including the question of whether plaintiffs have identified a constitutionally-protected interest that was impaired by defendants' conduct. As to these issues we intimate no views.

3. In a § 1983 action we accord the prior judgment the same preclusive effect that it would have in the state courts. *Migra v. Warren City School Dist. Bd. of Educ.*, — U.S. —, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). A summary judgment on grounds of sovereign immunity is a judgment on the merits for purposes of res judicata. *Herring v. Texas Dept. of Corrections*, 500 S.W.2d 718, 720 (Tex.Civ.App.1973), *aff'd*, 513 S.W.2d 6 (Tex.1974).

isdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit. Further, the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried.

Thus the scope of the res judicata bar is dependent on a determination of which issues are "connected with a cause of action or defense" in the first suit.

■ The Texas Supreme Court has never explicitly stated what becomes of an issue that is actually raised in the first action but not decided there because a judgment on the merits is entered on some other ground. However, if res judicata barred the relitigation only of those issues actually decided in the first action, it would be indistinguishable from collateral estoppel with respect to the issues raised in the pleadings; only with respect to issues that should have been raised in the pleadings but were not raised would res judicata pose a greater bar than collateral estoppel. *See Gilbert v. Fireside Enterprises, Inc.,* 611 S.W.2d 869, 871 & n. 4 (Tex.Civ.App.1980). Furthermore, if the pleading of a different legal theory would have induced the court to decide a particular issue in the first action, the issue is plainly one "which, with the use of diligence, might have been tried in [the] former action." Diligence is, in brief, a key determinant of the applicability of the res judicata bar to any particular case.

Some uncertainty about this rule has arisen since the Texas Supreme Court's decision in *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973). In *Griffin,* a contractor sued his employer alleging that the two parties had had a contract, that the contractor had performed under their contract, and that he had not been paid. Judgment was entered for the employer. The contractor then sued on a theory of quantum meruit, but the Court of Civil Appeals affirmed its dismissal on the basis of res judicata. Reversing, the Texas

Supreme Court noted that, although the quantum meruit claim could have been joined with the contract claim, the two actions were factually independent; the contractor could recover in quantum meruit while conceding that there was no actual contract between the parties or that, if there was an actual contract, he had not fully performed. The case was thus analogous to *Moore v. Snowball,* where the plaintiff in the second suit conceded without reservation all of the factual issues placed in dispute by his prior action. The only things common to the first and second suits in *Moore* and *Griffin* were the property and the transaction, respectively, underlying the suits; the legal theories and factual bases were, in both cases, entirely distinct.

In *Gravis,* decided by the Texas Supreme Court two years before *Griffin,* the court found that a plaintiff's suit against a drug manufacturer upon a strict liability theory was barred by an earlier adverse judgment in a suit upon a negligence theory identical as to parties and overlapping in material ways in their facts. The court rejected the argument that the judgment in the negligence action should be no bar because negligence is not an issue in a products liability suit. Because "[b]oth suits involve[d] a tort action resulting from the furnishing of the same drug for the same operation on the same person," .470 S.W. at 642, the court held that the two claims were obliged to be brought in a single action. In short, a change in legal theory was not enough to justify separate actions.

The present plaintiffs are in an even weaker position than the *Gravis* plaintiffs because the shift in legal theory from their state suit to their federal suit does not free them from reliance on the factual allegations made in their state complaint. Though the legal bases for the two actions are distinct—§ 1983 in place of Texas tort law—the crucial factual issue raised by plaintiffs' complaints in both actions is the alleged negligence of officials of the school district. Flores, however, relies upon the following declaration by the *Griffin* court:

*Freeman [v. McAninch]* has been consistently cited for the proposition that all grounds of recovery or defense relating to the cause of action asserted in the pending suit must be urged or will be barred by the judgment. *Ogletree v. Crates,* Tex.Sup., 363 S.W.2d 431; *Moore v. Snowball,* 98 Tex. 16, 81 S.W. 5. We have not said or held that a judgment in a suit on one claim or cause of action is necessarily conclusive of all claims and causes of action against the same party, or relating to the same property, or arising out of the same transaction....

... As a general rule a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit. *See Moore v. Snowball* ....

496 S.W.2d at 537–38 (additional citations omitted).

The question raised but not answered by *Griffin*—as by *Gravis*—is what constitutes a "different cause of action" for res judicata purposes. Flores argues in effect that a "different cause of action" is a suit grounded in a different legal theory, the factual underpinnings of which need not be different from the factual underpinnings of the prior suit so long as those factual issues were not actually litigated and decided in the prior suit. By this test, res judicata would not bar the present suit because § 1983 is a legal basis for recovery distinct from Texas tort law, and the principal factual issue in the two suits—the school board's alleged negligence—was not determined in the earlier state court action. As we have noted above, however, this view leaves res judicata a dead letter in the sense that it would be no broader a rule than collateral estoppel with respect to issues raised in the pleadings.

 In this *Erie*-like inquiry, we do not independently examine the policies behind the choices made by Texas courts. Rather, we attempt faithfully to apply Texas law. Consistent with this surrogate role, our primary reason for rejecting Flores's reading of *Griffin*[4] is its heavy reliance upon *Moore v. Snowball,* where the court declared definitively that "a judgment is conclusive upon the issues *tendered by the plaintiff's complaint,*" 81 S.W. at 8 (emphasis added). We conclude therefore that "a different cause of action" is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit; that is, an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor. *Dobbs v. Navarro,* 506 S.W.2d 671, 673 (Tex.Civ.App.1974). Flores, as we have previously noted, cannot meet this standard, for to concede the factual issues previously raised would be to admit that the school officials were not negligent.

 This result is not so harsh as it may first appear. The doctrine of res judicata, like a statute of limitations, penalizes lapses in diligence, thereby assuring potential defendants that their exposure to liability is not wholly open-ended. Flores has offered no excuse for the failure to join the § 1983 action with the state tort claim.[5]

---

**4.** As an incidental matter, we disagree with the school district's argument that the above-quoted portion of *Griffin* was dicta overruled by the Texas Supreme Court in *Texas Water Rights Com'n. v. Crow Iron Works,* 582 S.W.2d 768 (Tex.1979). *Crow,* if anything, reaffirms *Griffin* —a natural result, because *Griffin* is consistent with the longstanding res judicata jurisprudence in Texas. Specifically, the *Crow* court defined the doctrine of res judicata as stating "that a *cause of action* once finally determined ... cannot afterwards be litigated by new proceedings." *Id.* at 771 (emphasis added). Moreover, this circuit has already indicated that it does not believe *Griffin* to change the Texas law of res judicata; in *Brachett v. Universal Life Insurance Co.,* 519 F.2d 1072, 1073 (5th Cir.1975),—a post-*Griffin* decision—we restated the traditional Texas formulation of res judicata (almost exactly as it was later restated by the Texas Supreme Court in *Crow* ) without citing *Griffin,* but citing *Abbott Laboratories v. Gravis.*

**5.** It is unquestioned that a § 1983 claim can be advanced in a state court suit, as state courts exercise concurrent jurisdiction with federal

All of the information relating to the school district's alleged negligence was surely as available to the plaintiffs when they filed their state lawsuit as when they filed the federal suit. Beyond this, there is no suggestion that any fact necessary to the filing of the § 1983 action first came to plaintiffs' attention after the state action had been decided.

Flores, however, would have us overlook this issue of diligence and permit successive suits to be prosecuted so long as the policies underlying the doctrine of res judicata are not offended. We are, of course, obliged to apply this rule if it is the approach that would be followed in the Texas state courts, see note 3, supra, and this framework does appear to have been adopted by the Texas Courts of Civil Appeals in Dallas and Houston.

In *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869 (Tex.Civ.App.1980), the Dallas court reviewed several possible ways that "cause of action" might be defined for res judicata purposes, and ultimately concluded that the Texas courts have employed a functional case-by-case approach designed to effectuate the policy considerations underlying the doctrine of res judicata: "promotion of judicial economy, prevention of vexatious litigation, prevention of double recovery, and promotion of the stability of decisions." *Id.* at 877. If consideration of a second suit would pose no threat to any of these interests, the court concluded, the successive action may be entertained. This formulation was later followed by the Houston court in *Cohen v. Cohen*, 663 S.W.2d 617, 620 (Tex.Civ.App. 1984). The district court below accepted the *Gilbert* formulation as an accurate statement of the Texas law of res judicata, and held consequently that the present action was not barred because there was 1) no waste of judicial resources in view of the summary disposition of Flores's state court suit, 2) no risk of double recovery, 3)

no evidence of purposeful vexatiousness in the failure to join the two claims in a single suit, and 4) no threat to the stability of the state court judgment.

We cannot agree that *Gilbert* accurately states the Texas law. *Gilbert* purports to make a subjective policy-based determination in each case, but it will in practice prove nearly as mechanical as, and likely more arbitrary than the constructs it purports to reject. There is no great waste of judicial resources in any case decided summarily; there is no risk of double recovery in any case where the plaintiff lost his first suit; purposeful vexatiousness will seldom appear, and *Gilbert* would raise no bar where the splintering of the actions is not done purposefully; and finally, the stability of a judgment is imperiled only if an issue has been decided in the prior suit, in which case the collateral estoppel doctrine already bars relitigation.

■ In brief, the *Gilbert* rule draws several intersecting lines based on concepts of judicial economy and stability rather than a single line based on the diligence of the plaintiff. This approach is not without merit, and might yet be adopted by the Texas Supreme Court at some future time. We conclude, however, that the present law of res judicata, as enunciated by the Texas Supreme Court for well over a century, is not so constricted. As *Griffin* states, issues of fact actually litigated and determined in one suit are barred in all later suits, whether or not the later suit arises from the same cause of action; only when the subsequent suit is on a different cause of action will those issues which have not been actually litigated and determined not be barred. 496 S.W.2d at 538. If the subsequent suit is not on a different cause of action, even issues not actually litigated in the prior suit will be barred.

■ Whether two lawsuits constitute "different causes of action" must be an

courts over such claims. *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir.1984). As sovereign immunity is no defense to a claim grounded in § 1983, Flores could have obtained full and fair consideration of his complaint if he had joined

his § 1983 claim to his state tort claim; consequently, there is no basis here for an exception to the traditional bar of res judicata. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980).

objective determination. A different cause of action is not merely a different theory of recovery; it should differ in "the theories of recovery, *the operative facts*, and the measure of recovery," *Dobbs v. Navarro*, 506 S.W.2d 671, 673 (Tex.Civ.App.1974) (emphasis added). A contrary rule, such as that adopted by the *Gilbert* court, cannot be harmonized with the holding in *Moore* that res judicata operates upon all the issues tendered in the plaintiff's complaint. As *Moore* is plainly still good law, having been cited in several of the recent Texas Supreme Court decisions, we conclude that *Gilbert* is not an authoritative statement of the Texas law of res judicata.

 Plaintiffs, by acting diligently, could have brought all of their claims in the original suit in the Texas courts. Consequently, a successive suit grounded in the same operative facts cannot now be maintained. Plaintiffs have done no more in their § 1983 action than to advance a new theory of recovery; however, "[t]he assertion of a theory of recovery different from that of the first suit is not enough to state a new cause of action under Texas law."

1. Although I discuss only this issue, I have substantial doubts that the ruling would withstand scrutiny on other issues. The alleged wrong in this case is not "sufficiently egregious as to be 'constitutionally' tortious." *See Dollar v. Haralson County*, 704 F.2d 1540, 1543–44 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983) (county's failure to construct bridge over creek at "most needed place in the county" did not rise to the level of a constitutional violation); *Hull v. City of Duncanville*, 678 F.2d 582, 584 (5th Cir.1982) (city's negligent failure to maintain properly railway crossing not actionable under section 1983) (quoting *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981)); *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982) ("simple negligence is insufficient to support liability [under section 1983] of high police officials and municipalities for inadequate training, supervision, and control of individual officers...."); *York v. City of Cedartown*, 648 F.2d 231 (5th Cir.1981) (city's negligent design and construction of street and drainage system not cognizable under section 1983).

It should also be remembered that in *Parratt v. Taylor* the Supreme Court disapproved of unlimited expansion of section 1983:

*Wilson v. Wilson*, 532 F.Supp. 152, 155 (M.D.La.1980), *aff'd*, 667 F.2d 497 (5th Cir.), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3485, 73 L.Ed.2d 1368 (1982). As the present suit was barred by res judicata, the judgment for the plaintiffs must be reversed and judgment entered for the defendants.

REVERSED.

GARZA, Circuit Judge, specially concurring:

Although Judge Higginbotham presents an excellent argument for the proposition that the Texas law of res judicata precludes the section 1983 action before us, I disagree with the majority's interpretation of Texas law and believe that the Texas courts would not find appellee's claim precluded. Although I concur in the result reached by the majority, I would reverse this case on the merits because the appellee failed to establish that his section 1983 claim occurred as a result of an official policy, custom, or usage of the school district.[1] Consequently, I respectfully file this special concurrence.

To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society. *Parratt*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420, 434 (1981).

In addition, the jury awarded $250,000 in compensatory damages, $225,000 for the alleged violation of constitutional rights, and $75,000 for Flores's suicide, which raises the unsettled issue of double recovery of damages.

In determining the preclusive effect of prior state court judgments, federal courts must apply the law of the state from which the judgment emerged. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Southern Jam, Inc. v. Robinson*, 675 F.2d 94, 97 (5th Cir.1982); 28 U.S.C. § 1738 (1976).

Appellee argues that under Texas law a different cause of action arises when a suit is based on a different legal theory, as long as the facts of the cause of action were not actually litigated and decided in a previous suit. Appellee contends that a different cause accrues even when the case arises out of the same facts. The majority's argument that "this view leaves res judicata a dead letter in the sense that it would be no broader a rule than collateral estoppel with respect to the issues raised in the pleadings" does not account for the fact that the test for res judicata under Texas law is a case-by-case approach that considers the policy considerations underpinning the doctrine. *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869 (Tex.Civ. App.—Dallas 1980, no writ) and *Cohen v. Cohen*, 663 S.W.2d 617 (Tex.Civ.App.— Houston 1984, no writ) correctly state the Texas law on this issue. Examine *Flores v. Edinburg Consolidated Independent School District*, 554 F.Supp. 974, 980–82 (S.D.Tex.1983). These policy considerations include "the promotion of judicial economy, prevention of vexatious litigation, prevention of double recovery and promotion of the stability of decisions." *Gilbert* at 877. Texas courts will not apply res judicata to a subsequent action unless it substantially contravenes one or more of these policy considerations. *Westinghouse*

*Credit Corp. v. Kownslar*, 496 S.W.2d 531, 532 (Tex.1973); *Gilbert* at 877.

The instant case offends none of these policy considerations. Judicial economy is not wasted because the previous suit was terminated promptly by a summary judgment. There will be no double recovery because the plaintiff took nothing in the first suit. It is also clear that this suit is not vexatious. In any event, as *Gilbert* stated, the complete bar of a claim is too harsh a penalty for failing to join two causes of action in one lawsuit.[2] Such a result is compelling where, as here, the cause of action is entirely different from the one brought in state court. Finally, the current action does not affect the stability of a prior state court judgment. That ruling was reached entirely on legal grounds, no factual matters were decided. Since this action violates no important res judicata policy considerations a Texas court would not apply res judicata to bar the action. I would affirm the district court's analysis and application of Texas law on this point. 554 F.Supp. 974, 980–82.

I would reverse the district court, however, on the issue of liability under section 1983 because the plaintiff was not injured as a result of an official policy, custom, or practice of the school district.

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, 635 (1978), the Supreme Court held that municipalities may be responsible for the constitutional torts of their employees if such injuries resulted from a municipal custom, policy, or usage, even though a custom had not been formally endorsed by a decision-making body. 436 U.S. at 690–91, 98 S.Ct. at 2036, 56 L.Ed.2d at 635–36.

**2.** The majority contends that the result of its decision is not too harsh because "Flores has offered no excuse for the failure to join the § 1983 action with the state tort claim." At the time his suit was brought in state district court (Jan. 8, 1979), however, it was unclear whether or not a plaintiff could maintain a section 1983 action for negligence. As Justice Rehnquist noted in a 1979 majority opinion,

whether an allegation of simple negligence is sufficient to state a cause of action under

§ 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action. *Baker v. McCollan*, 443 U.S. 137, 139–40, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433, 439 (1979). It was not until *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that this issue was settled.

Recently, after much deliberation, this court sitting *en banc* defined official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, at 862 (5th Cir.1984) (rehearing petition denied); *Webster v. City of Houston*, 735 F.2d 838, at 840 (5th Cir.1984).

Appellee argues that reasonable jurors could conclude, on the evidence admitted at trial, that the custom or policies of the school district created a pervasive risk of harm to school children using dangerous machinery, proximately causing a deprivation of Flores's constitutional rights. The record reveals some evidence that establishes what the appellee terms a "safety vaccum" at the school. Appellee presented evidence about various safety deficiencies in the design and maintenance of the woodshop. He pointed out that the guard on the power saw that caused the injury was missing[3] and noted that school officials at every level failed to promulgate woodshop safety rules pursuant to state law requiring schools to adopt written rules governing the safety and well-being of students. T.E.A. regulations, Section 133.1 (226.52.-01.101). Finally, appellee notes that the jury heard evidence that the shop instructor left students unsupervised and/or allowed eighth graders to monitor seventh graders and permitted students to use the saw in question even after the guard was removed.

The plaintiff's evidence of incidents of lax safety and negligence on the part of the instructor fails to indicate, as a matter of law, that these safety deficiencies were the result of official policy, the delegation of policy-making authority, or so common and well settled as to constitute a custom.

As to official policy, the evidence in the case reveals that school district officials were concerned for the safety of their students. The fact that school officials did not promulgate rules specifically addressing safety in woodshop class does not mean that the school had an official policy of creating or condoning unsafe classroom conditions. It is unrealistic to expect school officials to create written safety policies governing every conceivable set of circumstances that might arise in disparate classrooms. Moreover, the school district did make general statements that reflected a concern about student safety, and emphasized this concern during in-service training sessions.

The record evidence does not support a conclusion that the school district officials delegated policy-making authority to Cantu. In *Webster*, this court stated that:

[a] 'policymaker' must be one who takes the place of the governing body in a designated area of city administration: City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.

The delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee.... The governing body must expressly or impliedly acknowledge that the agent or board acts

---

3. The teacher testified that he occasionally removed the blade to facilitate students' use of the "dado" blade.

in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board. *Webster,* at 841 (quoting *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984) (en banc)). There was some evidence that school district officials partially delegated some safety responsibility to principals and individual teachers. *E.g.,* Record, vol. VI, at 280, 297–98. On the other hand, as appellee admitted in his brief, the evidence also indicated that teachers lacked the authority to make decisions about equipment. Appellee's brief, at 23–25; Record, vol. VI, at 282; *id.* vol. IV, at 338–39. In addition, it is apparent that school district officials, not Cantu, were responsible for the alleged negligent design of the woodshop classroom. *E.g.,* Record vol. IV, at 341. The record evidence is insufficient to establish that the school district expressly or impliedly acknowledged that Cantu was acting in lieu of district officials or that Cantu took the place of the school district in the area of woodshop safety regulation.

The evidence of a custom of unsafe conditions is also insufficient to justify the jury verdict. We stated in *Webster* that:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. The trier of fact must be able to charge the governing body with actual or constructive knowledge of such actions of subordinates. There was no proof of actual knowledge here. 'Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public

discussion or of a high degree of publicity.'

At 842 (quoting *Bennett,* 728 F.2d at 768.).

There is little, if any, evidence in the record that other teachers, or other shop teachers created or maintained unsafe conditions in their classrooms. Moreover, there is little or no evidence that there was any persistent, widespread practice of this nature. Indeed, the student injury rule for the school district was low. *Compare* Plaintiff's exhibits 35 and 37.

The jury correctly found that Cantu was negligent in removing the guard from the saw that caused the injury. Proof of this isolated negligent act, however, is insufficient to justify the verdict that a policy, custom, or usage of unsafe safety procedures existed. Appellee failed to produce evidence sufficient to show that the negligent actions of Cantu were made known to the district officials, were so common and settled that they should be attributed to school officials, or that they provoked "public discussion or ... a high degree of publicity" such as to constitute a custom fairly representing a school district policy.

The record reveals that the instructor in question had not had another serious injury in his class in ten years of teaching. Record, vol. V, at 99–100, 106. The textbook students used repeatedly stressed safety information, Plaintiff's exhibit 2, and the instructor reviewed these portions frequently. *E.g.,* Record, vol. IV, at 259; *id.* vol. VI, at 361; *id.* vol. III, at 37. In addition, the instructor demonstrated safety techniques and had students write down safety rules. *Id.* vol. VI, at 361; *id.* vol. IV, at 256.

As a matter of law, the plaintiff failed to establish that it was the school district's policy to maintain unsafe conditions in the woodshop class, that the district had delegated safety regulation to Cantu, or that Cantu's practices were so persistent and widespread as to constitute a custom. Therefore, I concur in the result reached by the majority.