**Alice C. GUERRERO f/k/a Alice C. Guerra, Appellant,**

v.

**Daniel E. GUERRA, Appellee.**

No. 04–04–00097–CV.

Court of Appeals of Texas, San Antonio.

April 20, 2005.

Gary A. Beahm, Gary A. Beahm, P.C., San Antonio, for appellant.

James N. Higdon, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Alice C. Guerrero appeals the trial court's order clarifying and enforcing the division of her retirement benefits set forth in the final divorce decree entered January 17, 1984. In her sole issue, Guerrero asserts the trial court erred in awarding her ex-husband, Daniel E. Guerra, a portion of her retirement benefits which was earned after the divorce. We disagree, and affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL HISTORY

A final decree of divorce was entered on January 17, 1984, dissolving the sixteen-year marriage of Alice Guerrero and Daniel Guerra and dividing their marital estate. Each spouse was awarded a share of the other spouse's retirement benefits to be calculated according to a formula set forth in the agreed divorce decree. On February 28, 2001, Guerrero filed a motion seeking clarification of the decree with respect to the exact amount that Guerra is entitled to receive of her retirement benefits from SBC Communications, Inc., f/k/a Southwestern Bell Telephone Company ("SBC"). An evidentiary hearing was held on January 30, 2002, at which Guerrero and Guerra testified about their intent, and Douglas Kruppa, a certified public accountant, testified about the valuation of Guerrero's SBC retirement benefits, which are comprised of a pension plan, a 401k savings plan and a discontinued profit sharing plan (the "PAYSOP"). The trial court took the matter under advisement. On October 21, 2003, Guerra filed a motion to enter a clarification order and qualified domestic relations order ("QDRO") dividing and assigning his share of Guerrero's retirement benefits. On November 18, 2003, the court entered an "Order Clarifying and Enforcing Prior Order" in which it found the decree's retirement formula was ambiguous, and awarded Guerra a 24.69% share of the total SBC retirement benefits received by Guerrero valued at the time of retirement. The trial court signed written findings of fact and conclusions of law on January 7, 2004.[2] Guerrero timely appealed.

2. The court's findings contain a typographical error indicating they were signed on "January 7, 2003;" it is clear from the remainder of the record, including the court's docket sheet, that the findings were signed on January 7, 2004. In addition, the initial omission from the clerk's record of the court's findings of fact and conclusions of law has been cured through their inclusion in a supplemental clerk's record filed with this court on December 2, 2004. We note that the findings of fact and conclusions of law track the court's find-

## Analysis

■ On appeal, Guerrero argues the trial court erred in awarding Guerra a share of her SBC retirement benefits which she earned after the parties' divorce. Guerrero does not challenge the court's ruling that Guerra is entitled to a 24.69% share, only its use of the date of her retirement as the valuation date for the retirement benefits. She argues the retirement benefits should be valued as of the date of divorce, because to do otherwise includes post-divorce increases and therefore invades her separate property. Guerra responds that the parties are bound by the agreed divorce decree,[3] and that the decree requires the retirement benefits to be valued as of the date of retirement, which necessarily includes any post-divorce increases. Both parties argue that the language of the divorce decree supports their interpretation. The trial court found the decree was ambiguous as to the division of retirement benefits, and entered a clarifying order awarding Guerra a share of the total retirement benefits valued on the date of retirement.[4]

The divorce decree provides in pertinent part,

the Court finds that Respondent [Guerra] has earned certain retirement benefits arising out of the past employment of the Petitioner [Guerrero] with Southwestern Bell Telephone Company. Therefore, the Court ORDERS, as part of the partition of the estate of the parties, Petitioner to transfer and assign to Respondent a percentage based on the formula below of any and all sums, whether accrued or unaccrued, matured or unmatured, vested or otherwise, together with all increases thereon, and any other rights related thereto, IF, AS, and WHEN paid by Southwestern Bell Telephone Company as pension, retirement, nondisability, or other benefits existing by virtue of Petitioner's past association with Southwestern Bell Telephone Company.

IT IS FURTHER ORDERED, that said partition shall be in accordance with the approved 'after-acquired' property theory concerning division of pension and retirement benefits.

The decree then sets forth a formula which provides that Guerra's share is to be calculated by (1) dividing the number of months the parties were married while Guerrero was employed at SBC by the number of months Guerrero was employed by SBC, (2) multiplying that quotient by the retirement pay received by Guerrero, and (3) then multiplying that product by 50%. The decree does not specify whether the fraction's denominator is the number of months employed by SBC at the time of retirement, or at the time of divorce. *See Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex.1977) (establishing a fraction-based formula for determining the community interest in retirement benefits and the

---

ings contained in the November 18, 2003 order.

3. The decree recites that the parties entered into an agreement for the division of their marital estate, finds that such agreed division is "just and right," and incorporates the agreement into the decree. Both parties on appeal refer to the divorce decree as an agreed decree.

4. Guerra contends that because Guerrero does not designate the particular findings of fact and conclusions of law that she is challenging on appeal, she has failed to raise a challenge to the court's findings and conclusions; therefore, the findings are binding and must be sustained if there is any evidence to support them. It is clear from the appellant's brief that Guerrero is challenging the court's finding that the decree is ambiguous and the court's calculation of Guerra's share as of the date of retirement rather than divorce. Guerrero has adequately presented her issue on appeal. Tex.R.App. P. 38.1(e), 38.9.

non-employee spouse's share of that interest measured at the time of retirement); *but see Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983) (altering the *Taggart* formula by changing the fraction's denominator to the number of months employed under the plan at the time of divorce). The formula set forth in the decree also provides for an adjustment to the amount of retirement pay received by Guerrero based on the "after-acquired property theory," but does not define the theory or how it is to be applied in calculating the benefits.

In its findings of fact and conclusions of law, the trial court found there is an ambiguity in the terms of the formula used to calculate Guerra's share of the SBC retirement benefits. The court clarified the formula by calculating Guerra's share as "24.69% of the totality of the SBC retirement pay received by [Guerrero] in whatever form received by her," and valuing the retirement benefits as of the date of receipt, *i.e.*, retirement. The court found that Guerrero had received the following sums from the three SBC retirement vehicles: $508,061.54 in a lump sum distribution from the pension plan upon her retirement on November 16, 2000; $129,538.10 which remained in the 401k plan as of August 21, 2003; and $3,028.46 in stock interests which remained in the PAYSOP as of July 31, 2003. The court calculated Guerra's 24.69% interest in the total retirement benefits as follows: $125,440.39 from the pension plan; $31,982.96 from the 401k plan; and $747.73 from the PAYSOP. The court ordered Guerrero to pay Guerra the sum of $163,141.24, representing his 24.69% share of the pension plan plus prejudgment interest, and to transfer a 24.69% interest in the 401k plan and PAYSOP to Guerra. The court's findings reflect that Guerrero signed a QDRO effecting the transfer.

■ While a court may not modify a property division in a divorce decree, if it is ambiguous, the trial court may enter a clarifying order to enforce compliance with the original division of property. TEX. FAM.CODE ANN. § 9.008(b) (Vernon 1998); *see Pearcy v. Pearcy*, 884 S.W.2d 512, 514 (Tex.App.-San Antonio 1994, no writ). Whether a decree is ambiguous is a question of law subject to *de novo* review. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex.2003); *Bishop v. Bishop*, 74 S.W.3d 877, 880 (Tex.App.-San Antonio 2002, no pet.). Agreed judgments are interpreted according to the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986) (marital property agreement incorporated into a final divorce decree is interpreted as a contract). A contract is ambiguous when its meaning is uncertain or doubtful, or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). The court determines whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances surrounding formation of the contract. *Id.* Merely because the parties argue different interpretations does not make an agreement ambiguous. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).

■ If we conclude the agreed decree, when read as a whole, is unambiguous with respect to the division of the retirement benefits, we must enforce the decree according to its literal language even if the decree improperly divided the benefits. *Baxter v. Ruddle*, 794 S.W.2d 761, 762–63 (Tex.1990); *Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex.2003) (where no direct appeal was taken, divorce decree was *res judicata*). However, if we conclude the decree is ambiguous, that is, subject to more than one reasonable interpretation, then the decree must be construed to give effect to the parties' true intent as ex-

pressed in the written instrument. *Forbau*, 876 S.W.2d at 133. When a contract is ambiguous, the parties' intent is a question of fact. *Coker*, 650 S.W.2d at 393–94; *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). The parties' intent is determined by reviewing the language of the decree as a whole, giving effect to each part of the decree. *Forbau*, 876 S.W.2d at 133; *Coker*, 650 S.W.2d at 393. "No one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938)). When a contract is ambiguous, parol evidence may be considered for the purpose of ascertaining the parties' intention at the time the contract was entered. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). In addition, the parties' post-divorce conduct may be considered in determining the parties' intent. *Consol. Eng'g Co. v. S. Steel Co.*, 699 S.W.2d 188, 192–93 (Tex.1985).

■ We must first determine whether the decree's division of Guerrero's retirement benefits is reasonably susceptible to more than one meaning, and is thus ambiguous. Based on the contradictory language regarding valuation of the retirement benefits, we hold that it is ambiguous. The decree awards Guerra a share of "any and all [retirement] sums," "whether accrued or unaccrued, matured or unmatured, vested or otherwise," "together with all increases thereon," "if, as and when paid" by SBC to Guerrero, which suggests the retirement benefits are to be valued on the date of Guerrero's retirement. The decree also provides, however, that the amount of retirement pay received is to be adjusted according to the "after-acquired property" theory, which suggests the benefits are to be valued on the date of divorce. Application of the "after-acquired property adjustment" to the formula is described in the text of the decree as "the retirement pay received proportioned thereon the number of months the parties were married while Petitioner was employed by Southwestern Bell Telephone Company in accordance with the 'after-acquired' property theory...."[5]

The decree does not define the "after-acquired property" theory or clearly explain its application. Guerra states in his brief that he has been unable to locate any cases that define or use the term "after-acquired property" in the context of a division of retirement benefits. In her brief, Guerrero argues the phrase "after acquired property" is "a word of art which traditionally holds [th]at property accrued after a date of divorce earned by a party as compensation [for] services rendered after a divorce [is] not part of the estate of the parties subject to division on divorce." The only authority Guerrero cites for this interpretation is *Berry*. In *Berry*, the Supreme Court valued the retirement benefits at the time of divorce, rather than the time of retirement, to avoid invading the employee spouse's separate property; however, the Court did not use the phrase "after-acquired property" or refer to this change to the *Taggart* formula as being based on an "after-acquired property theory." *See Berry*, 647 S.W.2d at 947. Moreover, the divorce decree in *Berry* was

---

5. The decree expresses the formula as follows:
*no. of mos. parties were married while Petitioner was employed by SBC[TC]*
no. of mos. Petitioner was employed by SBC[TC]

X   SBC[TC] ret[irement] pay (after "after-acquired" property theory adjustment)
X   50% = Respondent's share

silent as to the division of retirement benefits, whereas here there was an agreed division of retirement benefits that was incorporated in the final divorce decree. We conclude that due to the inclusion of an undefined and unclear "after-acquired property theory" adjustment, the decree is subject to more than one reasonable interpretation regarding valuation of the SBC retirement benefits, and is therefore ambiguous. Therefore, the trial court appropriately entered a clarifying order. *See Pearcy,* 884 S.W.2d at 514; *Cohen v. Cohen,* 663 S.W.2d 617, 621 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.) (trial court properly entered clarifying order where provision of property settlement in divorce decree failed to define phrase pertaining to future adjustment, making provision susceptible to two meanings and thus, ambiguous).

Having determined the decree's division of retirement benefits is ambiguous, we must next consider whether the trial court's interpretation of the provision is supported by the record. When a contract is ambiguous, its interpretation is a question of fact for the trial judge, aided by extrinsic evidence, if necessary. *Coker,* 650 S.W.2d at 393–94; *Cohen,* 663 S.W.2d at 621. As the fact finder, the trial judge determines the weight to be given any testimony and resolves conflicts in the evidence. *Chavez v. Chavez,* 148 S.W.3d 449, 457 (Tex.App.-El Paso 2004, no pet.). When the trial court makes specific findings of fact, and a statement of facts is filed, we will sustain the court's fact findings as legally sufficient if there is any probative evidence in the record to support them. *Cohen,* 663 S.W.2d at 621; *see also Chavez,* 148 S.W.3d at 457. We will sustain the court's fact findings on factual sufficiency grounds unless they are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *Chavez,* 148 S.W.3d at 457.

Here, the trial court entered written findings of fact stating that Guerra's share of the SBC retirement pay is "24.69 % of the totality of the SBC retirement pay received by . . . Guerrero in whatever form received by her." The court then calculated Guerra's share as 24.69% of the total benefit amounts received by Guerrero upon her retirement. In this case, there is probative evidence in the record to support the court's fact findings in the form of Guerra's testimony as to his understanding of the decree, and the language of the decree itself.

At the hearing, Guerra testified that he understood the decree to clearly award him a 24.69% share of the total retirement benefits received by Guerrero, including any post-divorce increases. He stated that he did not understand the meaning of the "after-acquired property adjustment theory" referenced in the decree. Guerrero testified that she was employed by SBC for sixteen years following the divorce, and retired on November 15, 2000. She stated her belief that Guerra's share of her retirement was limited to 24.69% of the value of the retirement benefits as of the date of divorce, although she too stated she did not know what the "after-acquired property theory adjustment" meant. Kruppa, the accountant testified that the value of Guerrero's pension plan at the time of divorce was $43,454.81. Kruppa stated he was not familiar with the "after-acquired property theory," and could not calculate Guerra's share under that theory.

On appeal, both parties highlight different phrases within the decree to support their opposing interpretations. Guerrero argues the decree unambiguously provides that the retirement benefits are to be valued at the date of divorce, and that any post-divorce increases are excluded, based on her interpretation of the "after acquired property" adjustment. As discussed

above, she has not presented any authority for her interpretation of that phrase, it is undefined and unclear in the decree, and both parties testified they do not know what the phrase means. Guerrero also stresses the decree's statement that Guerra's share arises out of her "past employment" and "past association" with SBC as an indication that the benefits are to be valued at the time of divorce. However, we have construed the phrase "past employment" as merely a description of the type of benefits the ex-spouse is entitled to receive, *i.e.*, arising from the spouse's past employment, and not a limitation on the value of the interest. *See Hernandez v. Hernandez,* No. 04–97–00025–CV, 1998 WL 466096, at *3 (Tex.App.-San Antonio, Aug. 12, 1998, pet. denied) (not designated for publication).

On the other side, Guerra concedes the decree is ambiguous due to the inclusion of the undefined "after-acquired property" adjustment, which he contends has no determinable meaning. Guerra argues that the parties' intent can be discerned from the language of the decree itself, stressing the decree's use of the *total* number of months of Guerrero's SBC employment as the denominator of the formula's fraction, the use of the phrases "accrued and unaccrued," "together with all increases thereon," "if, as, and when" received.[6] Clearly, if the parties had so intended, they could have expressly limited the valuation of Guerra's share to the date of divorce by changing the fraction's denominator to the number of months employed at SBC *at the time of divorce,* or by citing to *Berry* as the controlling authority on valuation. *See Lopez v. Lopez,* No. 04–04–00277–CV, 2004

WL 2945697, at *2 (Tex.App.-San Antonio, Dec.22, 2004, no pet.).

Based on the entire record, and reading the decree as a whole, we conclude there is probative evidence to support the trial court's interpretation of the decree and calculation of Guerra's share as 24.69% of the total SBC retirement benefits received by Guerrero valued at the date of retirement. Further, we cannot say the trial court's fact findings are so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Accordingly, we overrule Guerrero's issue on appeal and affirm the trial court's judgment.

---

6. In *Treadway,* the Supreme Court disagreed with some courts' designation of the phrase "if, as, and when received" as a term of art evidencing an intent to value retirement benefits at the time of receipt rather than divorce.

The Court noted that the phrase merely "reflects the contingent nature of the community's interest in the retirement benefits and not necessarily the value of that interest." *Treadway,* 110 S.W.3d at 449 n. 7.