In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00093-CV

                                                ______________________________

 

 

               ELEANOR FOX DAVIS AND BARNES DAVIS,
Appellants

 

                                                                V.

 

       WILLIAM EARL NORRIS AND MARTHA SUE NORRIS, Appellees

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                          Trial Court
No. 2006-881

 

                                                                                                   

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            In pursuit
of the sale of a 545-acre farm in Wood County, from William Earl Norris and
wife, Martha Sue Norris, to Eleanor Fox Davis,[1]
to take place in one certain closing and one possible closing, the Norrises and
Davis signed three different contracts to sell, all dated November 5,
2003.  The contemplated initial closing
was held, but a subsequent dispute arose concerning an option to purchase the
balance of the farm and whether the option was properly exercised.

            Davis sued
for specific performance or damages.  The
Norrises responded with their motion for summary judgment based on the single
ground that Davis failed to timely exercise the option.  On August 13, 2010, the trial court granted
the Norrises summary judgment that Davis take nothing.[2]  

            From that
summary judgment, Davis appeals, asserting that summary judgment was error
because the stated nine-month notice was not a condition to the exercise of the
option, that Davis’ exercise of the option was effective, that fact issues
exist concerning which contract applies (and thus which option controls) and
whether there was a waiver of the nine-month notice requirement, and that
summary judgment was improper because it did not address Davis’ claim for
damages.  We reverse the summary judgment
and remand this case to the trial court for further proceedings, because (1)
the option in the third contract is the controlling option, and (2) the
contract is ambiguous on what action would constitute an exercise of the
option.[3]

            The Norrises’
motion for summary judgment was of the “traditional” sort.  To prevail on a traditional motion for
summary judgment, a movant must establish that there is no genuine issue as to
any material fact and that the movant is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); Fort Worth
Osteopathic Hosp., Inc. v. Reese,
148 S.W.3d 94, 99 (Tex. 2004); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979).  To gain a traditional summary judgment, the
defendant must conclusively negate at least one element of each of the
plaintiff’s theories of recovery or plead and conclusively establish each
element of an affirmative defense.  Sci. Spectrum v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Because
the movant bears the burden of proof, all conflicts in the evidence are
disregarded, evidence favorable to the nonmovant is taken as true, and all
doubts as to the genuine issues of material fact are resolved in favor of the
nonmovant.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985); see Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311
(Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999).

(1)        The Option in the Third
Contract Is the Controlling Option

 

            The dispute
in this case centers around the option to purchase the remainder of the
Norrises’ farm.  On November 5, 2003, the
parties signed three contracts—contracts which are not individually dated.  In the first contract, Davis contracted to
purchase 215.405 acres of the approximately 545-acre farm owned by the
Norrises.  In the second contract, Davis
contracted to purchase 9.5 acres and a house. 
This second contract is sometimes called the homestead contract by the
parties, as its purpose was to carve out homestead property so Davis could claim
a homestead exemption for tax purposes.  In
the third contract, Davis contracted to purchase “210±” acres, which the
parties agree is intended to be the balance of the land to be part of the
original purchase, beyond the homestead property.  The parties closed on the homestead contract
and the third contract sometime in December 2003.  This left the option to purchase pending.

            The options
set out in the first contract and the third contract would allow Davis to
purchase, on or before January 1, 2007, essentially the remainder of the
545-acre farm not already purchased. 
Exhibit A made part of the first contract was signed and dated by Davis
November 3, 2003, and by the Norrises November 4, 2003.  Exhibit A made part of the third contract was
signed by all the parties and dated only by the Norrises November 3, 2003.  The Exhibit A attached to the third contract—but not the exhibit
attached to the first contract—also
contained the handwritten notation that has become a principal focus of this
case:  “Seller
will have 9 months notice before Buyer will Close.”  All parties initialed this notation.  

            Some years
later, by letter dated March 20, 2006, and mailed March 28,[4]
Davis announced to the Norrises her intent to exercise the option.  The letter stated, “this letter provides nine
(9) months notice” and provided that closing would be held December 20,
2006.  About August 22, 2006, the Norrises
mailed Davis a letter stating that, “[a]s of this date we have not received an
option contract” and describing the requirements of an option to purchase.  About November 15, 2006, the Norrises’
attorney sent a letter to Davis stating that “[m]y clients do not agree that
the terms of Exhibit A create an option in your favor to purchase any of their
property.”  The Norrises did not appear
at the time and place designated by Davis for a closing.

            The first
issue we must decide is which contract to interpret.  Davis argues there is a fact issue concerning
whether the Third Contract replaced the First Contract, modified the First
Contract, or is an independent contract. 
The Norrises argue the evidence conclusively establishes that the Third
Contract replaced the First Contract. 
The determination of which contract controls depends on whether the
contracts were intended to be interpreted together as a single agreement,
whether one contract replaced the other, or whether one contract modified the
other.

            In Courage Co. v. Chemshare Corp., the
Fourteenth District Court of Appeals held two contracts involving computer
software, which were highly integrated and referenced each other, were both
part of the same agreement and the latter contract did not supersede the
first.  93 S.W.3d 323 (Tex. App.—Houston
[14th Dist.] 2002, no pet.).  In this
case, there is no evidence the contracts were intended to be interpreted
together, forming a single agreement.  Neither
contract in this case makes any reference to the other contract.  With the exceptions of the Exhibit A of both
contracts, the contracts are otherwise boilerplate real estate form contracts
for purchase of ranch land or farms.  We
reject Davis’ argument that the First Contract and the Third Contract were
intended to be interpreted together.

            Davis
alternatively argues that a fact issue exists because the Exhibit A to the
First Contract was signed after the Exhibit A to the Third Contract.[5]  While the dates on the two exhibits make up
more than a scintilla of evidence that the First Contract was signed after the
Third Contract, the summary judgment evidence conclusively establishes the
Third Contract replaced the First Contract. 
As argued by the Norrises, the dates on the contracts do not establish
an order of execution.  All three contracts
were executed November 5, 2003.  Although
she could not remember when each contract was signed, Davis testified in her
deposition:  “We had a contract for 215
plus or minus acres.  We wanted to
homestead the house and 10 acres. 
Therefore, the first contract was divided into two contracts.”  In her deposition, Norris testified that “they
separated the contract” and later testified the contract was divided “after it
was in the title company.”  Both parties
testified the First Contract was signed first. 
Further, the parties concede that no closing was conducted on the First
Contract.

            We agree
with the Norrises that the Third Contract was a novation that replaced the
First Contract.  A novation is the
substitution of a new agreement in place of an existing agreement.  Fulcrum
Cent. v. Autotester, Inc., 102
S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.).  The summary judgment evidence conclusively
establishes the Homestead and Third Contracts were novations of the First
Contract.  Davis concedes “where there
are two agreements that address the identical topic, but have differing terms,
the one which is executed later controls.” 
See Midwest Med. Supply Co. v. Wingert, 317 S.W.3d 530 (Tex.
App.—Dallas 2010, no pet.).  Thus, the
Norrises established, as a matter of law, that the Third Contract governs the
agreement of the parties.

(2)        The Contract Is Ambiguous on What Would
Constitute an Exercise of the Option

 

            At trial,
both parties assumed the Third Contract required a nine-month notice to
exercise the option.[6]  The Norrises’ traditional motion for summary
judgment is based solely on this assumption. 
Davis argues on appeal, for the first time, that the nine-month notice
provision is not a term of accepting the option that must have been strictly
fulfilled.[7]

            At oral
argument, the Norrises asserted that this issue was not presented to the trial
court.  To the extent the Norrises argue
that the error is not preserved for our review, we conclude Davis did not
forfeit this issue by failing to raise it in the trial court.[8]  The Norrises were required to establish as a
matter of law that they were entitled to summary judgment.  See
Tex. R. Civ. P. 166a(c); Clear Creek Basin Auth., 589 S.W.2d 671;
Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex.
App.—Texarkana 1989, no writ).  The
Norrises’ motion for summary judgment argued that, because Davis failed to
exercise the option in strict compliance with the option,[9]
no contract was formed to bind the parties to close a sale of the optioned
property.[10]  The motion for summary judgment did not
include any alternative theories beyond the nine-month-notice issue.  Thus, in order to be entitled to summary
judgment, the Norrises were required to establish, as a matter of law, that the
nine-month-notice provision was a term for exercising the option and that Davis
failed to comply with the provision.

            The Texas
Supreme Court has held “summary judgments must stand or fall on their own
merits, and the non-movant’s failure to except or respond cannot supply by
default the grounds for [a traditional summary judgment].”  McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993); see M.D. Anderson Hosp. & Tumor Inst. v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000). 
Because the Norrises had the obligation to establish, as a matter of
law, that a nine-month notice was required to exercise the option and that
Davis failed to comply with it, Davis did not forfeit this argument by failing
to raise it in her response.  We may
review the nine-month-notice issue.

            In
construing a written contract, our primary concern is to ascertain the true intentions
of the parties as expressed in the instrument. 
Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983).  To achieve this
objective, we should examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless.  Id. 
Unless the contract is ambiguous, the court will enforce it as
written.  Id.  A court may not rewrite
the parties’ contract or add to its language under the guise of interpretation.
 Am.
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 162 (Tex. 2003).  If the contract can be given a certain or
definite legal meaning or interpretation, then it is not ambiguous, and the
court will construe it as a matter of law. 
Coker, 650 S.W.2d at 393; Guerrero v. Guerra, 165 S.W.3d 778, 782
(Tex. App.—San Antonio 2005, no pet.).  If,
however, a contract is capable of more than one reasonable interpretation, it
is ambiguous.  Schaefer, 124 S.W.3d at 157; Guerrero,
165 S.W.3d at 782.  Whether a contract is
ambiguous is a question of law that we review de novo.  Shanks
v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003).  Granting summary judgment based solely on an
ambiguous contract is improper because the intent of the contracting parties is
an issue of fact.  Claxton v. Lake Fork Water Control & Improvement Dist. No. 1,
246 S.W.3d 381, 385 (Tex. App.—Texarkana 2008, pet. denied).

            It has long
been held that, because an option to purchase property is a unilateral benefit
to the optionee, options must be exercised strictly according to the terms of
the agreement.  Zeidman v. Davis, 342 S.W.2d 555, 558 (1961); Johnson v. Portwood, 34 S.W. 596, 598 (Tex. 1896).  “It is a well-settled principle that strict
compliance with the provisions of an option contract is required.”  Besteman,
272 S.W.3d at 784.

            Here, if the
prospective purchaser is to comply strictly with the terms of the option
agreement, the terms of that option agreement must be more fully determined
than has been done at this stage of the proceedings.  A contract is ambiguous when its meaning is
uncertain or doubtful or it is reasonably susceptible to more than one meaning.  See
Skelly Oil v. Archer, 356 S.W.2d 774,
778 (Tex. 1961).

            Neither
party takes the position that the contract itself is ambiguous, and the issue
of ambiguity did not arise in the trial court. 
In most circumstances, to consider a matter not raised by a party would
lead this Court into the Serbonian Bog of unassigned error proscribed us by the
Texas Rules of Appellate Procedure.  See Tex.
R. App. P. 38.1(f).  In a civil
case, this Court is generally prohibited from addressing unassigned error.  See
Pat Baker Co. v. Wilson, 971 S.W.2d
447, 450 (Tex. 1998).  The issue of
contractual ambiguity, however, can be considered sua sponte by a reviewing
court.  Progressive County Mut. Ins. Co. v. Kelley, 284 S.W.3d 805, 808
(Tex. 2009); see also Sage St. Assocs. v. Northdale Constr. Co.,
863 S.W.2d 438, 445 (Tex. 1993) (court can decide on its own motion that
contract is ambiguous).

            The contract
is at least unclear on what is required to exercise the option.  The applicable Exhibit A provides, in full,
as follows:

I.         Eleanor Fox Davis and Assigns, Buyer, has
Option and First Right of Refusal until January 1, 2007 to purchase a total of
up to 327 +/- acres (being the remaining amount of acres owned by William Earl
and Martha Sue Norris, Seller, of the original 545 +/- acres located at 1336 FM
69, Quitman, Texas 75783) at a purchase price of $840.98 per acres.

 

II.        Sellers
reserve the right to retain a total of up to 147 +/- (being described as 0626
H. Wilson Survey Tract 2 147.3 acres) acres in the southeast section of the
remaining 327 +/- acres.

 

III.       Easement to
be identified for the gas line from the meter to the house.

 

IV.       Further, both
Buyer and Seller hereby agree to institute and make permanent the following
Deed Restrictions to the 545 +/- acres in entirety to become effective on the
executed date of this contract:

                                                            SELLER WILL HAVE 9 MONTHS NOTICE 

                                                            BEFORE BUYER WILL CLOSE.

No Pig Farming Operations

No Chicken Farming Operations

No RV Parking or RV Storage
Operations

No Permanent Trailer Homes

No Mobile Homes

No Commercial Storage Operations

No Homes under 1,000 square feet with
the exeception of any present housing structures located on the northeast side
of the property.

 

 (Handwritten provision italicized).  The handwritten, nine-month-notice provision
does not explicitly say that it is a condition to the exercise of the option,
but there is no provision that explicitly sets out the method for
exercise.  A deadline of January 1, 2007,
is explicitly set out, but the contract is unclear on precisely what it is a
deadline for.  Is it a deadline for
notice of exercise, or of closing on the option property?  And, though logically the nine-month-notice
provision and the deadline of January 1, 2007, seem to be related, the contract
is silent on the nature of that relationship. 
We conclude that an ambiguity exists as to the option that requires
findings on the parties’ intent on just what is required for the option to be
exercised.  Based on what is found in
that threshold issue, it might require further findings on whether Davis did
what was required to exercise the option and possibly whether there might have
been some justification for any failure to take that step.  Ambiguity exists.

            We must
affirm the summary judgment if any of the theories presented to the trial court
and preserved for our review are meritorious. 
Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).  None of the theories presented to the trial
court, however, are meritorious.  All of
the theories presented to the trial court are based on the assumption that the
nine-month-notice provision is a condition to the exercise of the option; and
that has yet to be determined.

 

            We reverse the summary
judgment of the trial court and remand for proceedings consistent with this
opinion.[11]

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          July 27, 2011

Date
Decided:             October 25, 2011











[1]Davis’
husband, Barnes Davis, did not participate in any of the transactions at issue,
but joins this appeal.  We will refer to
Eleanor Fox Davis as Davis, though the term will be inclusive of Mr. Davis, as
appropriate.

 





[2]The
judgment awarded the Norrises $16,735.02 in attorney’s fees, plus $5,000.00 in
attorney’s fees for an appeal to this Court, and $2,500.00 for an appeal to the
Texas Supreme Court.  On August 31, 2010,
the Norrises moved for a “judgment nunc pro tunc” requesting an additional
award of interest.  See Tex. Fin. Code Ann.
§ 304.001 (West 2006).  The trial court
rendered judgment September 3, 2010, adding post-judgment interest at a rate of
five percent.  Post-judgment interest is
statutorily mandated and is recoverable even if the judgment does not mention
it.   Nat’l
Union Fire Ins. Co. v. Wyar, 821 S.W.2d 291, 297 (Tex. App.—Houston [1st
Dist.] 1991, no writ); El Universal,
Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports, Inc.,
802 S.W.2d 799, 804 (Tex. App.—Corpus Christi 1990, writ denied); Crenshaw v. Swenson, 611 S.W.2d 886, 892
(Tex. App.—Austin 1980, writ ref’d n.r.e.). 
The second judgment is labeled “judgment nunc pro tunc,” but was
rendered while the trial court still had plenary power.

 





[3]Because
these conclusions are dispositive of this appeal, it is not necessary to
address Davis’ remaining issues.





[4]The
record contains a certified mail receipt containing the date the letter was
mailed.

 





[5]Exhibit
A to the First Contract was signed November 3 by Davis, and November 4 by the Norrises.  Exhibit A to the Third Contract was signed
November 3 by the Norrises, but was signed without a date by Davis.  





[6]In
her response, Davis argued that, because the option contained in the First
Contract should govern, there was a fact question concerning whether she was
obligated to give nine months’ notice before closing.  

 





[7]Davis’
first issue is as follows:  “The trial
court erred in entering summary judgment based upon the nine months’ notice of
closing for the underlying real estate contract being a condition to exercise
the option.”  Davis argues that “[t]he
disputed term is a term for the underlying contract and does not apply to
either option or the exercise of either option.”  Davis later argued:

 

Here
the trial court improperly applied the nine months notice as a condition of the
exercise of the option when it actually applied to the underlying real estate
contract.  The trial court ignored the
fact that the letter exercising the option was unqualified, unambiguous, and
strictly complied with the options in both Exhibit A’s.

 

The issue is assigned for our review.

 





[8]In
reviewing an order granting summary judgment, we are ordinarily restricted to
the arguments expressly presented to the trial court in the written motion for
summary judgment and the response.  Tex. R. App. P. 33.1; Tex. R. Civ. P. 166a(c); see Clear Creek Basin Auth., 589 S.W.2d
at 677; Driskill v. Ford Motor Co.,
269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.); see also Martinez, 941
S.W.2d at 912.

 





[9]“Acceptance
of an option must be unqualified, unambiguous, and strictly in accordance with
the terms of the agreement.”  Comeaux v. Suderman, 93 S.W.3d 215, 220
(Tex. App.—Houston [14th Dist.] 2002, no pet.); Atterbury v. Brison, 871 S.W.2d 824, 829 (Tex. App.—Texarkana 1994,
writ denied) (Cornelius, C.J., concurring); see
Chambers v. Hunt Petroleum Corp., 320
S.W.3d 578, 583 (Tex. App.—Tyler 2010, no pet.); Besteman v. Pitcock, 272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008,
no pet.).  “Any failure to exercise an
option according to its terms, including an untimely or defective acceptance,
is simply ineffectual, and legally amounts to nothing more than a rejection.”  Atterbury,
871 S.W.2d at 829; see Hutcherson v.
Cronin, 426 S.W.2d 638 (Tex. App.—Tyler 1968, no writ); Lambert v. Taylor Tele. Co-operative,
276 S.W.2d 929 (Tex. App.—Tyler 1955, no writ). 
A timely and proper acceptance of an option, though, creates a binding
bilateral contract.  Sinclair Ref. Co. v. Allbritton, 218 S.W.2d 185, 188 (Tex. 1949); Luccia v. Ross, 274 S.W.3d 140, 149
(Tex. App.—Houston [1st Dist.] 2008, pet. denied).

 





[10]An
option consists of (1) an underlying contract that is not binding until
accepted, and (2) a covenant to hold open to the optionee the option to
accept.  Faucette v. Chantos, 322 S.W.3d 901, 908 (Tex. App.—Houston [14th
Dist.] 2010, no pet.).  “When the
optionee gives notice or otherwise complies with the terms and conditions of
the option—regardless of the existence of consideration for the option—a
bilateral executory contract is formed, one party having the duty to convey and
the other the duty to pay.”  Hott v. Pearcy/Christon, Inc., 663
S.W.2d 851, 854 (Tex. App.—Dallas 1983, writ ref’d n.r.e.).





[11]We
make no ruling as to the enforceability of the option, ruling only that the
current summary judgment must fail.